UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

In re:   Keith W. Robbins

    Debtor                                           CASE NO. 06-32555

                                                 CHAPTER    7

Cadlerock Joint Venture II, L.P.

    Plaintiff

vs.

Keith W. Robbins

    Defendant                                   Adv. Proc. No. 07-03139

**MEMORANDUM-OPINION**

THIS ADVERSARY PROCEEDING is before the Court after the conclusion of a trial on the merits of Plaintiff's claims against Defendant under 11 U.S.C. §§ 727(a)(2), (3), (4) and (5). For the reasons set forth below, the Court finds in favor of Defendant.[1]  By virtue of 28 U.S.C. §157(b)(2)(J) this is a core proceeding. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

FINDINGS OF FACT

Defendant formed an entity, the Wyatt Group (the "Wyatt Group"), in 1989 for purposes of providing temporary technical services workers to gas companies.  The Wyatt Group remained in

---

[1] The Court notes that Defendant has made a motion "for directed verdict."  Because the Court's findings of facts and conclusions of law unequivocally warrant a finding in favor of Defendant, the Court need not rule on such motion and denies it as moot.

1

business until December 31, 2006. Defendant formed an entity, Cross Country Clearing ("Cross Country"), in 2000 for purposes of providing land clearing services. Cross Country ceased doing business in sometime in late 2002 or early 2003. Defendant is currently unemployed.

As part of its business activities, Cross Country borrowed several hundred thousand dollars from Fifth Third Bank, at least part of which was used to finance the purchase of several large pieces of equipment. Defendant and the Wyatt Group guaranteed that loan. In connection with that Fifth Third Bank loan or a previous attempt to obtain a loan, Defendant prepared a personal financial statement in which he reported owning $44,000.00 worth of antiques. Defendant testified[2] that this was his rough estimate of the value of certain antiques in his home, and that he did know at the time that his wife considered the antiques her exclusive property [3] or that they probably were not worth $44,000.00.

Although initially successful, Cross Country entered into a series of contracts to provide land clearing services that proved to be losing propositions. Defendant testified that a variety of circumstances caused Cross Country to lose significant amounts of money on those contracts, ranging from poor project cost estimations to unforseen weather conditions that delayed projects and/or caused project costs to soar. Defendant also testified that he did not file tax returns for Cross Country after the year 2000 because Cross Country had consistently lost money and he believed it would owe no taxes.

During the Summer of 2002, Defendant's wife loaned Defendant approximately $15,000.00, which was used by the Wyatt Group or Cross Country. At some time later, Defendant informed his wife that he would not be able to repay the loan and they agreed that he would transfer his share of their marital residence to her as repayment of the loan. Defendant's wife testified that the house had been appraised when purchased and that its purchase price had been $280,000.00. At the time that Defendant transferred his interest in the home to her, Defendant's wife believed that the house was

---

[2]The Court finds Defendant's testimony consistently credible.

[3]Defendant's wife testified that the money used to purchase the antiques came from her mother. Her grandmother had established a trust for her mother's benefit with instructions to use at least part of the money for Defendant's wife's benefit. The Court finds Defendant's wife's testimony consistently credible.

2

encumbered by approximately $285,000.00 to $290,000.00 in first and second mortgages. Defendant's wife believed that $15,000.00 was a fair approximation of the value of Defendant's share in the equity in the house at the time of the transfer.[4]

As a result of business losses, Cross Country ultimately defaulted on its loan from Fifth Third Bank. Defendant cooperated with Fifth Third Bank and worked diligently to overcome Cross Country's financial difficulties–as attested to by a representative of Fifth Third Bank. Unfortunately, Defendant's efforts failed and the majority of Cross Country's assets were repossessed and/or sold in an attempt to satisfy the indebtedness to Fifth Third Bank. The indebtedness was only partially satisfied and Fifth Third Bank subsequently cut its losses and sold the loan to Plaintiff's predecessor in interest in 2005.

Upon acquiring the loan from Fifth Third Bank, Plaintiff's predecessor in interest began collection efforts against Cross Country and against Defendant and the Wyatt Groups as guarantors of the loan. As Plaintiff's own witness testified, Defendant cooperated with Plaintiff's predecessor in interest and had several conversations with that witness in an attempt to work out a resolution of the debt. During this time, Defendant continued to operate the Wyatt Group on a limited basis.

Unfortunately, Defendant's efforts to resolve his financial difficulties were unsuccessful and Defendant filed a Chapter 7 petition in September of 2006. Plaintiff's predecessor in interest filed this Adversary Proceeding on March 1, 2007. It also obtained a judgment against Cross Country and the Wyatt Group for the indebtedness in Jefferson County, Kentucky, Circuit Court in March 2007. Plaintiff's predecessor in interest subsequently transferred its claims against Defendant to Plaintiff.

During the administration of his Chapter 7 bankruptcy case and during the pendency of this Adversary Proceeding, Defendant provided information concerning his personal finances as well as those of Cross Country and the Wyatt Group by, among other things, providing Plaintiff with the QuickBooks bookkeeping software used for Cross Country and the Wyatt Group (the "Software"). The Chapter 7 Trustee filed a "no asset" report on April 3, 2007.

Plaintiff's own expert witness, CPA Calvin Cranfill ("Mr. Cranfill"), used the Software and

---

[4]Although unstated, Defendant's wife obviously believed that the marital residence had appreciated in value by approximately $35,000.00 to $40,000.00 since its purchase.

other documents provided by Defendant[5] to analyze Defendant's and Cross Country's and the Wyatt Group's financial affairs. His analysis, however, was flawed. Defendant testified that he had programmed into the Software certain "memorized transactions" concerning certain assets and cash flows related to those assets. He also testified that by the time that Mr. Cranfill used the Software to prepare his own analysis, those "memorized transactions" were no longer actually taking place because the assets in question had been liquidated. Mr. Cranfill admitted that he did not change the settings in the Software to take out the "memorized transactions" in preparing his own analysis. He also essentially acknowledged that his failure to do so could account for at least some of the alleged discrepancies between Defendant's statements regarding the financial status of Cross Country and Mr. Cranfill's view of the same.

Ultimately, Mr. Cranfill was really only concerned that Defendant had not followed generally accepted accounting principles in determining the liquidation value of Cross Country. Indeed, he found no indication that company money was improperly accounted for and saw no "smoking guns" as to why Defendant's companies failed.

## CONCLUSIONS OF LAW

Based on the foregoing facts, Plaintiff clearly fails in its claims.[6] Plaintiff seeks a general denial of a discharge to Defendant under 11 U.S.C. §§727(a)(2), (3), (4) and (5). To prevail, Plaintiff must prove each of the elements of those sections of the Bankruptcy Code by a preponderance of the evidence. *In re Keeney*, 227 F.3d 679, 683 (6th Cir. 2000). The Bankruptcy Code should be construed liberally in favor of the debtor. *Id.*

## 11 U.S.C. §727(a)(2)

Plaintiff contends that Defendant "with the intent to hinder, delay or defraud, transferred, or has permitted to be transferred property of the Estate before the filing of the Petition and property

---

[5] Mr. Cranfill's testimony indicates that Defendant was cooperative in making information available, including "multiple boxes–probably a dozen or so boxes of the original media records–paid invoices, reports, bank statements–all sorts of things."

[6] Indeed, the Court is somewhat mystified by Plaintiff's aggressive assertions against Defendant.

4

of the Estate after the filing of the Petition."[7]

To succeed under 11 U.S.C. §727(a)(2), a plaintiff must prove two distinct elements: (1) a disposition of property, and (2) a "subjective" intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property. *Id.* at 683. Extrinsic evidence of actual intent to defraud must be submitted to prove a claim under 11 U.S.C. §727(a)(2). *See In re Hamilton*, 306 B.R. 575, 584 (Bankr. W.D.Ky. 2004) citing *Marine Midland Business Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir. 1991). The Court may infer fraudulent intent from circumstantial evidence. *Id.*

In the instant case, Plaintiff failed to show by preponderance of evidence that Defendant disposed of property–whether Debtor's property prior to the petition or the estate's property after the petition–with the requisite subjective intent to hinder, delay or defraud Plaintiff. First, Plaintiff failed to identify clearly the property that it believes Defendant transferred with bad intent. Plaintiff's Complaint makes allegations of improper transfers, but Plaintiff's *evidence* utterly fails to pinpoint the specific property allegedly transferred and, more importantly, fails to clarify whether such property was even Defendant's or Defendant's estate's property. Plaintiff's own expert witness, Mr. Cranfill, found no "smoking guns."

Even if Plaintiff had clearly shown that Defendant disposed of property, however, Plaintiff failed to show that Defendant ever intended to hinder, delay or defraud Plaintiff. Defendant provided consistent, credible testimony throughout the trial upon the merits. That testimony demonstrates without question that Defendant has at all times acted in good-faith in his business dealings and in his bankruptcy case–in particular, toward Defendant–and that any loss or disposition of his personal or business assets resulted from poor business decisions rather than any malevolent intent. Simply put, Defendant made mistakes that caused his businesses to fail, thereby leaving him unable to repay Plaintiff, nothing more. Accordingly, Plaintiff cannot succeed under 11 U.S.C. §727(a)(2).

## 11 U.S.C. §727(a)(3)

---

[7]Presumably, Plaintiff meant to allege that Defendant improperly transferred property of the *Debtor* (rather than the Estate) prior to Debtor's filing his bankruptcy petition. There is, of course, no bankruptcy estate prior to the filing of the petition. *See* 11 U.S.C. §541(a).

Under 11 U.S.C. §727(a)(3), a debtor will be denied a discharge where he has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." The purpose of this provision of the Bankruptcy Code is to ensure that the trustee and creditors receive sufficient information to trace a debtor's financial history for a reasonable period past to present. *In re Tapp*, 339 B.R. 420, 426 (Bankr. W.D.Ky. 2006), citing *In re Trogdon*, 111 B.R. 655, 658 (Bankr. N.D. Ohio 1990). The adequacy of debtor's records must be determined on a case by case basis, based upon such factors as debtor's occupation, financial structure, education, experience, sophistication and any other circumstances that should be considered in the interest of justice. *Id.*

Here, Plaintiff fails in its burden to show that Defendant failed to provide sufficient information regarding his financial history. Based on the testimony of Plaintiff's own expert witness, Mr. Cranfill, it is clear that Defendant provided sufficient information. Indeed, as noted above, Mr. Cranfill used Defendant's own bookkeeping software–albeit incorrectly–in preparing his testimony. Accordingly, the Court must find in favor of Defendant with respect to this claim.

## 11 U.S.C. §727(a)(4)

Plaintiff cannot succeed under 11 U.S.C. §727(a)(4)(A).[8] This section of the Bankruptcy Code requires proof that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Keeney*, 227 F.3d at 685.

Plaintiff premises its claim under 11 U.S.C. §727(a)(4)(A) primarily on Defendant's ascribing a zero value to his shares in the Wyatt Group in his bankruptcy schedules. To a lesser extent, Plaintiff points to statements that Defendant allegedly made regarding a "trust" and an

---

[8]Although Plaintiff does not specify the subsection of 11 U.S.C. §727(a)(4) upon which it relies, the substance of Plaintiff's factual allegations clearly places the claim within 11 U.S.C. §727(a)(4)(A).

6

appraisal of his residence.

With regard to the shares of the Wyatt Group, Plaintiff simply failed to demonstrate that the Wyatt Group shares did have any value at the time of Defendant's bankruptcy petition. As noted above, Plaintiff's expert's analysis of Debtor's and Debtor's businesses' financial affairs was fatally flawed. Plaintiff cannot show with credibility that the shares of the Wyatt Group had any value at the time of Defendant's petition. Thus, Plaintiff failed to establish that Defendant made a false statement regarding the value of the Wyatt Group.

With respect to Defendant's allegedly false statement regarding a "trust," Plaintiff again failed to demonstrate that such statement was false or that Defendant knew that such statement was false. Plaintiff here points to Defendant's statement in response to Question 14 of his Statement of Financial Affairs in his bankruptcy petition that certain furniture had been purchased "by trust in name of Suzanne Brown (mother) and specified by grantor as intended for specified uses by Sarah Robbins." Plaintiff asserts that there is no formal trust for the benefit of Sarah Robbins, Defendant's wife, and that the foregoing statement is therefore false. The Court finds that such statement was either not false or not intentionally false. Clearly, Defendant's use of the word "trust" here was intended to have a general layman's meaning, not a technical legal meaning. Defendant is not a lawyer and simply described his understanding of the arrangement by which certain antique furniture was purchased by Defendant's mother-in-law for the benefit of her daughter, Defendant's wife. As noted above, Defendant's wife testified that the money used to purchase the furniture did come from a trust, albeit a trust technically for her mother's benefit, not hers.

The Court is somewhat perplexed by Plaintiff's assertion that Defendant allegedly made a false statement regarding an appraisal of Defendant's residence.[9] First, the Court is hard pressed to find in the record where Defendant made such statement "under oath." Second, as noted above, Defendant's wife testified, that an appraisal of the residence *was* conducted at the time of its purchase.

Perhaps most importantly, Defendant's consistently credible testimony demonstrates without question that Defendant has at all times acted in good-faith in his business dealings and in his

---

[9]Granted, Plaintiff's pursuit of this point was tepid at best.

7

bankruptcy case. Any statements that Defendant made that might have turned out to have been inaccurate were certainly unintentionally inaccurate. Because Plaintiff has failed to establish the existence of false statements made under oath and/or that Defendant made any such statement with fraudulent intent, the Court must find in favor of Defendant under 11 U.S.C. §727(a)(4).

## 11 U.S.C. §727(a)(5)

Finally, Plaintiff asserts that Defendant should be denied a discharge under 11 U.S.C. §727(a)(5) because Defendant has failed adequately to explain "the loss or deficiency of funds generated from THE WYATT GROUP and Cross Country."

Under 11 U.S.C. §727(a)(5), a debtor will be denied a general discharge where the debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. *In re Tapp*, 339 B.R. at 427. The objecting party bears the initial burden of going forward with evidence, which must be more than merely an allegation that the debtor has failed to explain losses. *Id*. Once the objector has introduced some evidence of the disappearance of substantial assets, the debtor must satisfactorily explain what happened. *Id*. To be "satisfactory," an explanation must explain the losses or deficiency in such a manner as to convince the court of good faith and business-like conduct. *Id*. The explanation need not be meritorious to be satisfactory. *Id.* citing *In re Nye*, 64 B.R. 759, 762 (Bankr. E.D.N.C. 1986).

As discussed above, Defendant has more than adequately explained the nature of his financial distress.[10] He simply made business mistakes that ultimately caused his companies to fail and force him into bankruptcy. Therefore, the Court must find in favor of Defendant under 11 U.S.C. §727(a)(5).

A separate Order consistent with the foregoing has been entered in accordance with Federal Rule of Bankruptcy Procedure 9021.

---

[10] The Court also notes that Plaintiff's claim here seems to be against the Wyatt Group and Cross Country Clearing, which are *not the debtor* in this case. Thus, Plaintiff's claim would seem to fail as a matter of law under 11 U.S.C. §727(a)(5). Nevertheless, because Plaintiff's claim clearly fails as a factual matter, the Court does not address this issue.